AMANDA J. McCRACKEN *v.* GEO. W. NELSON *et al.*

1. REVIVOR. *Scire facias.* Where a party to a suit dies and *scire facias* is ordered as against the administrator and heirs of the deceased, naming them, except one heir, and the writ issued and was served upon the administrator and all the heirs, naming them, the revivor is valid.

2. SAME. *Same. Misnomer.* If the *scire facias* is served upon an heir, and in the return of the officer the true name is not given, proceedings based thereon are not void. The heir being served by one name, should have pleaded in abatement for misnomer, and the error would have been corrected.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesborough. H. C. SMITH, Ch.

BROWN & DEADERICK for complainant.

I. E. REEVES and H. H. INGERSOLL for complainants.

DEADERICK, C. J., delivered the opinion of the court.

In May, 1880, the complainant filed this bill in the chancery court at Jonesboro, alleging that she is the youngest of the six children and heirs-at-law of John McCracken, deceased, who died in January, 1865; that said McCracken owned, at his death, a tract of land of sixty or seventy acres, out of which dower was assigned to his widow; that the complainant was a small child at the death of her father, and continued to live on said land with her mother up to the time

of filing her bill, and was then twenty-three years of age.

The bill further alleges that defendant, Nelson, about 1860, obtained a judgment against her father for $——, before Mathes, a justice of the peace, and that the cause was taken in some way to the circuit court of Washington county, and during its pendency there, said McCracken died. Sometime thereafter, as charged, the cause was revived by a void order against the administrator of McCracken and five of the heirs, but not against complainant. She alleges that no *scire facias*, or other notice, was ever served upon her. But the suit was revived and judgment rendered, and said land was sold, and bought by defendant, Nelson, and that he took possession, and had held all said land but the dower tract thenceforward.

She seeks to set aside the sale of her sixth interest in the land, and have an account for rents and profits.

An imperfect transcript of the condemnation proceedings and sale of said land, under the orders of the circuit court, is made an exhibit to the bill. The clerk certifies the transcript to contain the orders of court, judgment and copy from execution docket, copy of bill of costs, sheriff's returns, and Nelson's raised bid, and that this is all of said record which he can find after diligent search.

Nelson answers, and sets up in defense that the judgment was taken, execution issued and levied on the land, and returned for condemnation to the circuit court. There the cause was pending until January

1865, when defendant died, and soon thereafter *scire facias* issued against the administrator and the heirs-at-law of deceased, and was served upon all of them, and the judgment revived and land condemned and sold, and he became the purchaser, and has ever since held the same.

The chancellor held no *scire facias* was awarded against complainant, and the sale was void as to her, and gave her a decree for one-sixth of the land and an account for rents and profits. This account was taken, and a decree rendered thereon for $192.30, the value of the rent of said one-sixth, and the land was sold for partition, and from the final decree, defendants, the heirs-at-law of Nelson, he having died, appealed to this court.

The Referees recommend an affirmance of said decree, and defendants except.

The transcript of the circuit court proceedings shows that at June term, 1867, the death of defendant, McCracken, had been previously suggested and proved; it was then suggested that Alexander Mathes was his administrator, and that John, William, George, Catherine and Elizabeth McCracken were his heirs-at-law. On motion, suit was revived against said administrator and heirs-at-law, and it was ordered that *scire facias* issue, notifying them to appear at the next term and show cause why the suit should not be revived against them. It will be observed that in this order directing the issuance of a *scire facias*, the name of the complainant, as one of said heirs-at-law, does not appear.

At the next term there was an order for an " alias counterpart scire facias," to issue to Sullivan county.  At the next term, February, 1868, an order appears reciting that it appeared to the court that the scire facias had been served upon the administrator, and George McCracken, James McCracken, William McCracken, Catharine McCracken, Elizabeth McCracken, John McCracken, and Jennie McCracken, and they having failed to show cause to the contrary, the suit was revived against them, and on motion of plaintiff, judgment by default was rendered against them for the amount of plaintiff's recovery against decedent, and interest thereon and costs.  In rendering this judgment the order recites, that it appearing to the court that an execution from the justice of the peace was levied upon the land, describing it, on the first day of June, 1863, by S. T. Shipley, sheriff of the county, it was ordered that said land be sold, etc.   Then follows the bill of costs, and issuance of venditioni exponas to S. T. Shipley, sheriff.

The return of sale is full, made by Griffith, successor of Shipley, showing a sale to the plaintiff, G. W. Nelson, June 20, 1868, for $100, and from the execution docket Nelson appears, on June 24, to have raised his bid to the sum of $724.04, the amount of his judgment and interest and costs.

The order of February term, 1868, does recite that the scire facias had been served upon Jennie McCracken, which, it is insisted, is the name by which complainant is known.  And the deputy sheriff testifies that he did serve his process on three girls,

daughters of McCracken, and two sons, at their home in Washington county; the daughters were served at the house, and the sons in the field. The other son was served in Sullivan county. Three sons and three daughters, it appears from the record, were all the heirs-at-law of deceased.

George W. Nelson also deposes that he was present when the deputy sheriff served the writ upon the five children then at home, three girls and two sons, and saw him execute the process on the complainant.

So that it seems pretty clear that the writ was in fact executed upon complainant by the name of Jennie McCracken; and it is also adjudged, at a term after the writ was returned, that the sheriff had served the writ upon all the heirs of decedent, though as to complainant, by a different name from that in which she filed her bill. Yet we are satisfied that she was in fact notified by the service of the writ. And although the names are not mentioned in the writ, if issued against them as heirs, and the sheriff, in his return, gives them, this has been held sufficient: 3 Hayw., 299; 2 Yer., 394.

The complainant, in her bill, admits that Nelson had obtained a judgment against her father before Mathes, a justice of the peace, which was removed into the circuit court, and it appears in the record that is filed as an evidence, that upon the judgment an execution was issued and levied upon land, and the papers returned into the circuit court for condemnation of the land. The record is imperfect, but enough appears to show that the court had jurisdic-

McCracken *v.* Nelson.

tion of the subject-matter and parties, and that the judgment, even if erroneous, was not void, and cannot be impeached collaterally.

The chancellor and Referees held that the complainant was not served with the *sci. fa.*, and therefore the judgment was void. We think it is very clear she was served by the name of Jennie McCracken.

The complainant having been in fact served with the writ, as an heir-at-law, by one name, might have pleaded in abatement for misnomer, and in such case the true name being disclosed, the error could have been corrected, and the error is certainly not of a character to render the judgment void.

We are of opinion, therefore, that the decree of the chancellor was erroneous, and the same will be reversed, and the Referees' report set aside, and complainant's bill will be dismissed.